1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  HARINDER S. AULUCK,                          No. C -13-05511(EDL)

9          Plaintiff,                           **ORDER DENYING MOTION TO
                                                STRIKE AND GRANTING PLAINTIFF
10     v.                                       LEAVE TO FILE AMENDED
                                                COMPLAINT**
11 THE COUNTY OF ALAMEDA et al.,

12         Defendants.
   _____/

13

14         Defendant Aaron Chapman, M.D., moves to strike Plaintiff's second and fifth causes of

15 action under California Code of Civil Procedure section 425.16 and moves to strike Plaintiff's

16 punitive damages allegation under Federal Rule of Civil Procedure 12(f).  Plaintiff opposes the

17 motion to strike and seeks leave to file an amended complaint.  Both parties seek attorneys' fees.

18         For the reasons set forth below, the Court denies Defendant's motion to strike and the

19 parties' requests for attorneys' fees.  The Court grants Plaintiff leave to file an amended complaint.

20 As stated at the hearing, Plaintiff shall meet and confer with Defendants and file an amended

21 complaint (either the one attached to Plaintiff's opposition or a different one pursuant to a

22 stipulation between the parties) by February 18, 2014.

23 **I.      Background**

24         A.      Factual Background

25         Plaintiff Harinder Auluck, M.D. is a sixty-nine year old psychiatrist who provided medical

26 care at the Alameda County Juvenile Justice Center and Valley Adult Community Support Centers

27 for over twenty years.  (Compl. ¶ 11; Auluck Decl. ¶ 2.)  Defendants are Alameda County, Alameda

28 County's Heath Care Services Agency ("HCSA"), and Aaron Chapman, M.D., the Medical Director

   for the HCSA's Behavioral Health Care Services ("BHCS") department.  (Compl. ¶¶ 1-5; Chapman

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  Decl. ¶ 1.)

2         From 2010 through March 25, 2011, Plaintiff expressed concern about the poor quality of

3  care provided by Children's Hospital to Juvenile Justice Center patients.  (Compl. ¶ 12.)  Plaintiff

4  also complained about lack of a detoxification protocol for children coming off street drugs, poor

5  relations between primary care providers and behavioral health care providers, and the practice of

6  "dual charting" whereby behavioral health care staff lacked ready access to diagnostic notes

7  (including prescriptions) made by primary care providers and vice versa.  (Compl. ¶ 12; Auluck

8  Decl. ¶ 4.)

9         On or about March 28, 2011, Defendants Chapman and Alameda County placed Plaintiff on

10 administrative leave for, among other things, "alleged poor record keeping practices."  (Compl. ¶ 13;

11 Chapman Decl. ¶ 2.)  According to Plaintiff, this occurred less than a month after Alameda County

12 hired Defendant Chapman as Interim Director of the BHCS.  (Compl. ¶ 13; Auluck Decl. ¶ 5.)

13 Plaintiff met with Chapman on April 11, 2011 and shared his concerns regarding the care at the

14 Juvenile Justice Center.  (Auluck Decl. ¶ 6; 1/03/14 Brinegar Decl. Ex. 1.)  In turn, Chapman

15 mentioned concerns regarding Plaintiff's prescribing decisions and the his record keeping practices.

16 (1/03/14 Brinegar Decl. Ex. 1.)  Plaintiff responded that these charges were untrue.  (Auluck Decl. ¶

17 6.)

18         According to Plaintiff, Defendants offered to lift his administrative leave if Plaintiff agreed

19 to cease working at the Juvenile Justice Center, "submit to highly intrusive case monitoring by Dr.

20 Chapman's office," take a remedial continuing medical course on record keeping, and "update his

21 medical records to Dr. Chapman's subjective satisfaction on pain of losing his job."  (Compl. ¶¶ 15-

22 16; Auluck Decl. ¶ 7; Chapman Decl. ¶ 3 (noting that Plaintiff was required to comply with a

23 "Performance Improvement Plan").)  Plaintiff accepted Defendants' conditions and was taken off

24 administrative leave on approximately August 19, 2011.  (Compl. ¶¶ 17,19; Chapman Decl. ¶ 2.)

25 Plaintiff did so because he feared a report to the Medical Board of California and the National

26 Practitioner's Data Bank.  (Auluck Decl. ¶ 8.)  Plaintiff completed the continuing education course

27 and updated his medical charts.  (Compl. ¶ 18.)

28

2

Plaintiff alleges that despite his compliance with Defendants' requirements, Defendant Chapman made further unfounded complaints about Plaintiff's record keeping practices and, "unbeknownst to [Plaintiff], Dr. Chapman also started a campaign to brand [Plaintiff] as too old to practice medicine because of alleged 'memory lapses.'" (Compl. ¶ 19.)  In April 2012, Defendants placed Plaintiff on administrative leave until further notice for "unspecified fitness for duty" reasons." (Compl. ¶ 20; Auluck Decl. ¶ 10; Chapman Decl. ¶ 4.)  BHCS also began an investigation into Plaintiff's fitness for duty.  (Chapman Decl. ¶ 4.)  Plaintiff avers that the did not learn until February 2013 that one of the reasons he was placed on leave was alleged "memory lapses." (Auluck Decl. ¶¶ 17-19.)  He learned this when Advendist Health confronted him with a fax from Defendants that stated that Plaintiff was placed on administrative leave because Plaintiff's supervisors raised issues about his patient care, including "allegations that he had memory lapses and that his charting practices and medication prescription patterns fell below the standard of care." (1/03/14 Brinegar Decl. Ex. 3; Compl. ¶ 27; Auluck Decl. ¶¶ 17-19.)  Plaintiff characterizes this second administrative leave as retaliatory and a constructive discharge.

Plaintiff submitted his resignation on May 14, 2012, to be effective May 28, 2012.  (Compl. ¶ 21; 1/03/14 Brinegar Decl. Ex. 3; Chapman Decl. ¶ 5.)  Plaintiff avers that he was "forced to resign . . . because [he] did not want to become the victim of Dr. Chapman and Alameda County's further retaliatory actions and [his] working conditions were intolerable."  (Auluck Decl. ¶ 12.)  Defendants allegedly assured Plaintiff that they would not take action against his medical license.  (Compl. ¶ 21; Auluck Decl. ¶ 13 ("Before I resigned, I obtained Alameda County's promise that it would not report me to the California Medical Board.").)  At the time Plaintiff resigned, he was still on administrative leave and the fitness for duty investigation was pending.  (1/03/14 Brinegar Decl. Ex. 3; Chapman Decl. ¶ 5.)  Plaintiff alleges and avers that a much younger physician was hired to take his place at either the Juvenile Justice Center or the Valley Adult Community Support Centers and that younger psychiatrists "were not subjected to the same harassment that [Plaintiff] endured because of his age.  (Compl. ¶¶ 22-23; Auluck Decl. ¶ 9.)

On May 23, 2012, Defendant Chapman filed a complaint, i.e., an "805 report," against Plaintiff with the Medical Board of California ("MBC") because Plaintiff resigned while on

United States District Court
For the Northern District of California

administrative leave and while a fitness for duty investigation was pending.  (Compl. ¶ 24; Chapman Decl. ¶ 6.)  Chapman also alleged in the 805 report that there were concerns about Plaintiff's prescribing, patient monitoring, and medical documentation.  (Compl. ¶ 24; Chapman Decl. Ex. A.)  Moreover, "[a] damaging report was also submitted to the National Practitioners Data Bank, a federal information service that is universally checked by employers and hospitals when reviewing a physician's credentials."  (Compl. ¶ 24.)  Plaintiff first learned of Chapman's MBC complaint in January 2013, when the MBC requested an interview with him.  (Compl. ¶ 25, Auluck Decl. ¶ 14; 1/03/04 Brinegar Decl. Ex. 2.)  At the interview, Plaintiff reviewed Defendants' evidence against him and learned that his personnel file contained an allegedly "fraudulent" document – a document signed by two individuals who were no longer working for Alameda County on the date the document was allegedly signed.  (Compl. ¶ 26; Auluck Decl. ¶ 15.)  According to Plaintiff, the MBC investigator was shocked by this fact and disregarded the document while investigating Plaintiff.  (Compl. ¶ 26; Auluck Decl. ¶ 15.)   Chapman avers that BHCS turned over records to the MBC pursuant to a subpoena and that he did not review the records provided.  (Chapman Decl. ¶ 7.)

On June 23, 2013, the MBC sent Plaintiff a letter stating that it had determined that "there were no departures from the standard of care and there is insufficient evidence to pursue this matter further."  (1/03/14 Brinegar Decl. Ex. 4.)  The MBC found "No Violation" and closed the case.  (Compl. ¶ 28, 1/03/14 Brinegar Decl. Ex. 4.)  Adventist Health, which was reviewing Plaintiff's hospital privileges, dropped its request that Plaintiff undergo a neurological exam.  (Auluck Decl. ¶ 21.)  Plaintiff alleges that he suffered and continues to suffer pecuniary losses, including loss of wages due to this "constructive discharge," emotional distress anxiety, humiliation, and loss of reputation."  (Compl. ¶ 30.)

B.   Procedural History

Plaintiff sued Defendants in the Superior Court of Alameda County on October 28, 2013, and Defendants timely removed the case on the basis of federal question jurisdiction.  Plaintiff brings claims under the First Amendment of the United States Constitution, the Bane Act and Section 2(a) of the California Constitution, California Health & Safety Code § 1278.5, 29 U.S.C. § 631 (Age Discrimination in Employment Act), and California Gov. Code § 12940(a) (California Fair

United States District Court
For the Northern District of California

Employment and Housing Act ("FEHA")).   Plaintiff's second claim alleges that Defendants violated his speech rights under the California Constitution by taking adverse actions against him: (1) "twice placed on administrative leave without sufficient cause;" (2) "harassed for unsubstantiated and false record keeping practices that has adversely affected his professional reputation;" (3) "constructively discharged;" (4) "suffered an unjustified complaint with the California Medical Board that has adversely affected his professional reputation;" and (5) "contended with a fraudulent executed document submitted by Defendants in support of their false California Medical Board complaint against [Plaintiff]." (Compl. ¶ 34.) Plaintiff alleges that these same actions violate his speech rights under the United States Constitution.  In Plaintiff's fifth cause of action, he alleges that Defendants discriminated against him based on his age by: (a) twice placing him on administrative leave without sufficient cause; (b) harassing him about unsubstantiated and false record keeping practices; (c) constructively discharging him; (d) filing an unjustified MBC complaint against him; (e) filing a fraudulently executed document with the MBC; and (f) falsely informing Adventist Health that Plaintiff had memory lapses that compromised his ability to practice medicine.  (Compl. ¶ 56.)  Plaintiff alleges that these same actions constitute age discrimination under federal law.  (Compl. ¶ 51.)

Pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. section 425.16, Defendant Chapman moved to strike "all references and claims concerning Dr. Chapman's filing of a complaint with the Medical Board of California and an additional document submitted thereto, relating to the state law causes of action, as well as an order striking . . . all references to punitive damages."  (Dkt. 9 at 2.)  He argues that because the second and fifth claims arise from constitutionally protected activities – the filing of the 805 report to the MBC and submission of an allegedly fraudulent document in response to a subpoena – and because Plaintiff cannot establish a reasonable probability of success on their merits, the Court should strike these claims.  Defendant also argues that Plaintiff's claim for punitive damages arises from the 805 report and must be struck under Federal Rule of Civil Procedure 12(f).  Additionally, Defendant requests that the Court deny Plaintiff leave to amend the complaint and award Plaintiff costs and fees for the motion.

Plaintiff counters that Defendant's motion is procedurally flawed because the anti-SLAPP

1    statute only allows a motion to strike causes of action, not particular allegations, and, furthermore,

2    he has shown a probability of success.  Plaintiff argues further that the same allegations support

3    Plaintiff's federal claims and claims against other defendants.  Plaintiff also seeks leave to amend

4    his complaint and an award of attorneys' fees.  The Court held a hearing on Defendant's motion on

5    February 11, 2014.

6    **II.      Motion to Strike Causes of Action**

7           A.      California's Anti-SLAPP Statute

8           A SLAPP suit (strategic lawsuit against public participation) "seeks to chill or punish a

9    party's exercise of constitutional rights to free speech and to petition the government for redress of

10   grievances."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1055 (Cal. Ct. App. 2006).  California enacted

11   the anti-SLAPP statute as a means for disposing of lawsuits that are brought to chill the valid

12   exercise of constitutional rights.  Id.  The anti-SLAPP statute provides that:

> A cause of action against a person arising from any act of that person in furtherance of the
> person's right of petition or free speech under the United States Constitution or the California
> Constitution in connection with a public issue shall be subject to a special motion to strike,
> unless the court determines that the plaintiff has established that there is a probability that the
> plaintiff will prevail on the claim.

16   Cal. Code Civ. Proc. § 425.16(b)(1).  Courts must construe the statute broadly.  Cal. Code Civ. Proc.

17   § 425.16(a).  Activities that fall within the anti-SLAPP statute include: "(1) any written or oral

18   statement or writing made before a legislative, executive, or judicial proceeding, or any other official

19   proceeding authorized by law;" "(2) any written or oral statement or writing made in connection

20   with an issue under consideration or review by a legislative, executive, or judicial body, or any other

21   official proceeding authorized by law;" (3) "any written or oral statement or writing made in a place

22   open to the public or a public forum in connection with an issue of public interest;" or (4) "any other

23   conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right

24   of free speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc.

25   § 425.16(e)

26          A cause of action may be stricken if it arises from protected activity and lacks even minimal

27   merit.  Navellier v. Sletten, 29 Cal. 4th 82, 89 (Cal. 2002).  The court first determines whether the

28   defendant has made a threshold showing that the cause of action arises from protected activity.  Id.

**United States District Court**
For the Northern District of California

1   at 88.  The defendant must show that the activity fits within one of the categories set forth in section

2   425.16(e).  Navellier, 29 Cal. 4th at 88  (quoting Braun v. Chronicle Publishing Co., 52 Cal.  App.

3   4th 1036, 1043 (Cal. Ct.  App. 1997)).  "[W]here a cause of action is based on allegations that

4   included protected and nonprotected activities, the cause of action is vulnerable to a special motion

5   to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the

6   factual basis of the claim." A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc., 137 Cal.

7   App. 4th 1118, 1125 (Cal. Ct. App. 2006).

8         Once the defendant makes such a showing, the burden shifts to the plaintiff to demonstrate a

9   probability of prevailing on the cause of action.  Navellier, 29 Cal. 4th at 88.  To survive an anti-

10  SLAPP motion, the plaintiff "need only have stated and substantiated a legally sufficient claim." Id.

11  (internal quotation marks omitted); see also Grewal v. Jammu, 191 Cal. App. 4th 977, 989 (Cal. Ct.

12  App. 2011) (noting that the plaintiff's burden is "not high" as it must show only a case of "minimal

13  merit").  "Put another way, the plaintiff must demonstrate that the complaint is both legally

14  sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment

15  if the evidence submitted by the plaintiff is credited."  Wilson v. Parker, Covert & Chidester, 28 Cal.

16  4th 811, 821 (Cal. 2002). "Where a cause of action refers to both protected and unprotected activity

17  and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not

18  meritless and will not be subject to the anti-SLAPP procedure." Mann v. Quality Old Time Service,

19  Inc., 120 Cal. App. 4th 90, 106 (Cal. Ct. App. 2004) (emphasis in original); id. ("Rather, one a

20  plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that

21  its cause of action has some merit and the entire cause of action stands.  Thus, a court need not

22  engaged in the time-consuming task of determining whether the plaintiff can substantiate all theories

23  presented within a single cause of action and need not parse the cause of action so as to leave only

24  those portions it has determined have merit.") (emphasis in original); Oasis West Realty, LLC v.

25  Goldman, 51 Cal. 4th 811, 820 (Cal. 2011) (citing Mann); Burrill v. Nair, 217 Cal. App. 4th 357,

26  379 (Cal. Ct. App. 2013).

27        In assessing a cause of action's merits, a court considers "the pleadings, and supporting and

28  opposing affidavits stating the facts upon which the liability or defense is based." Cal Code Civ.

7

Proc. § 425.16(b)(2).  The court does not weigh credibility or the comparative strength of the evidence.  Grewal, 191 Cal. App. 4th at 990.  Rather, the court accepts as true all evidence favorable to the plaintiff and assesses the defendant's evidence to determine if it defeats the plaintiff's submission as a matter of law.  Id.; see also Wilson, 28 Cal. 4th at 821 ("[T]hough the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.") (emphasis in original).

The anti-SLAPP statute "cannot be used to strike particular allegations within a cause of action." A.F. Brown, 137 Cal. App. 4th at 1124 (Cal. Ct. App. 2006); Mann, 120 Cal. App. 4th at 106 ("Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate."). Similarly, a defendant cannot use the anti-SLAPP statute to strike remedies.  Guessous v. Chrome Hearts, LLC, 179 Cal. App. 4th 1177, 1187 (Cal. Ct. App. 2009) (noting in context of request for injunctive relief that anti-SLAPP statute applies only to a cause of action).

In federal court, the defendant cannot use the anti-SLAPP statute to strike federal claims, but only to strike state law claims.  Hilton v. Hallmark Cards, 599 F.3d 894, 900 n.2, 901 (9th Cir. 2010) (noting that "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims" that are "hear[d] pursuant to . . . diversity jurisdiction"); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the Erie analysis set forth in Lockheed the anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims.").  When an anti-SLAPP motion in federal court focuses on the sufficiency of the pleadings, it is treated like a motion to dismiss under Rule 12(b)(6) except that the anti-SLAPP statute's attorney's fee provision applies.  T.T. v. Cnty. of Marin, Case No. 12-2349 WHA, 2013 U.S. Dist. LEXIS 10512, at *7-*8 (N.D. Cal. Jan. 25, 2013) (citing Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006)).

B.    Analysis

Although Defendant initially sought improperly to strike only particular allegations and

**United States District Court**
For the Northern District of California

remedies, Defendant acknowledged in its reply brief that its anti-SLAPP motion was only properly directed at Plaintiff's second and fifth causes of action, and that it sought to strike Plaintiff's punitive damages claim under Federal Rule of Civil Procedure 12(f). Defendant challenges the sufficiency of Plaintiff's complaint, so the Court assumes that Plaintiff's allegations are true.

The protected activities asserted here are Defendant Chapman's filing of the 805 report with the MBC and submission of an allegedly fraudulent document in response to the MBC's subpoena. Plaintiff concedes for the purpose of this motion that these activities fall within section 425.16(e)(4).

The parties dispute, however, whether the second and fifth causes of action are "based on" these protected activities. See Navellier, 29 Cal. 4th at 89 (noting that the "critical question" is whether the cause of action is "*based on*" the defendant's protected activities )(emphasis in original). The second and fifth causes of action are based on the filing of the 805 report and submission of an allegedly fraudulent document as well as other activities that do not implicate the anti-SLAPP statute. "[W]here a cause of action is based on allegations that included protected and nonprotected activities, the cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis of the claim." A.F. Brown, 137 Cal. App. 4th at 1125;  Scott v. Metabolife Int'l, Inc., 115 Cal. App. 4th 404, 419 (Cal. Ct.  App. 2004) (noting that what matters is the "substance" or "gravamen" of each cause of action). Only where the allegations of constitutionally protected activity are "not merely 'incidental'" to the unprotected conduct is the anti-SLAPP statute implicated.  Id.

Defendant Chapman asserts that the filing of the 805 report and submission of the allegedly fraudulent document "are the central focus for the damages claimed in his complaint." (Def.'s Reply at 2.) Plaintiff counters that the gravamen of his complaint is anti-whistleblower retaliation and discrimination. Plaintiff points out that he alleges nine adverse employment actions, only two of which constitute protected activities.

Whether the filing of the 805 report and submission of the allegedly fraudulent document are substantial parts of Plaintiff's second and fifth causes of action is a close question. These protected activities are not the sole bases for the causes of action. They are far from the only source of Plaintiff's damages claims, yet they are not merely incidental to Plaintiff's second and fifth causes of

**United States District Court**
For the Northern District of California

1  action.

2      The resolution of the "gravamen" question is not necessary, however, because Plaintiff has

3  established that his second and fifth causes of action have more than minimal merit.  Plaintiff's

4  second cause of action is based on the Bane Act, Cal. Civ. Code section 52, which provides a right

5  to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or

6  enjoyment by any individual or individuals of rights secured by . . . the Constitution or laws of this

7  state."  "The elements of a claim for relief are: (1) an act of interference with a legal right by (2)

8  intimidation, threats or coercion."  Bellusa v. Bd. of Educ., Case No. 13-2930 JSC, 2013 U.S. Dist.

9  LEXIS 172865, at *28-29 (N.D. Cal. Dec. 9, 2013); see also Davis v. Kissinger, Case No. 04-878,

10  2009 U.S. Dist. LEXIS 11245, at *17-18 (E.D. Cal. Feb. 3, 2009) (listing Bane Act elements).

11  Plaintiff's fifth cause of action is for age discrimination under the California Fair Employment and

12  Housing Act ("FEHA"), Cal. Gov. Code § 12940(a).  To state an FEHA claim, a plaintiff must

13  allege that: (1) she was at least forty years old; (2) she was performing competently in the position

14  she held; (3) she suffered an adverse employment action; and (4) she was replaced by a substantially

15  younger employee with equal of inferior qualifications.  Reyes v. San Francisco Unified Sch.  Dist.,

16  Case No.  11-4628 YGR, 2012 U.S. Dist. LEXIS 134991, at *17 (N.D. Cal. Sept. 20, 2012); Nesbit

17  v. Pepsico, Inc., 994 F.2d 703, 704-05 (9th Cir.1993).

18      Defendant Chapman argues that the "pattern of adverse actions" Plaintiff alleges in the

19  complaint are not actionable under the Bane Act or the FEHA.  According to Defendant, California

20  Government Code sections 821.6 and 822.2 immunize him from liability for filing the 805 report

21  and submitting the allegedly fraudulent document in response to the MBC subpoena.  As to the other

22  alleged adverse employment actions, Defendant asserts that Plaintiff has not alleged facts showing

23  that his workplace was permeated with discriminatory intimidation, ridicule, and insult that was

24  altered the conditions of Plaintiff's employment and has not alleged facts to show constructive

25  discharge.  Plaintiff apparently acknowledges that Defendant Chapman is immune for filing the 805

26  report, but argues that Defendant is not immune for  submitting the allegedly fraudulent document.

27  Plaintiff also asserts that Defendants engaged in adverse employment actions by placing Plaintiff on

28  administrative leave twice, reducing his hours, making him take a remedial record keeping course,

1  and informing another hospital that Plaintiff had memory lapses.

2  Defendant is correct that the filing of the 805 report is not actionable because Defendant is

3  immunized for this conduct under California Government Code section 821.6.  This statute provides

4  that " [a] public employee is not liable for injury caused by his instituting or prosecuting any judicial

5  or administrative proceeding within the scope of his employment, even if he acts maliciously and

6  without probable cause."  Plaintiff does not dispute that Defendant Chapman's is a public employee.

7  It is also undisputed that Defendant was acting within the scope of his employment when he filed the

8  report and that it instituted an administrative proceeding.  The Court will therefore assess Plaintiff's

9  probability of success on the second and fifth causes of action without considering the 805 report.

10  Defendant's submission of an allegedly fraudulent document in response to an MBC

11  subpoena does not, however, fall within section 821.6.  Responding to a subpoena is not "instituting

12  or prosecuting" a judicial or administrative proceeding.  Defendant is also not immunized for this

13  alleged conduct under California Government Code section 822.2.  That statute provides that a

14  "public employee acting in the scope of his employment is not liable for an injury caused by his

15  misrepresentation, whether or not such misrepresentation be negligent or intentional, *unless he is*

16  *guilty of actual fraud, corruption or actual malice*."  Cal. Gov. Code § 822.2 (emphasis added).

17  Defendant asserts that Plaintiff did not plead fraud and did not adequately allege actual malice.

18  However, "actual malice" for section 822.2 purposes means "a conscious intent to deceive, vex,

19  annoy or harm the injured party."  Curcini v. Cnty. of Alameda, 164 Cal. App. 4th 629, 649 (Cal. Ct.

20  App. 2008).  Federal Rule of Civil Procedure 9(b) allows a party to allege malice generally.

21  Yagman v. Galipo, Case No. 12-7908, 2013 U.S. Dist. LEXIS 6978, at *28 (C.D. Cal. Jan. 7, 2013)

22  (noting that a plaintiff may allege malice generally in context of section 822.2).  Here, Plaintiff

23  alleges actual malice specifically in the complaint (Compl. ¶ 32), and there are numerous other

24  allegations supporting a conscious intent to harm Plaintiff.

25  Plaintiff has shown a probability of succeeding on his Bane Act claim.  Plaintiff alleges that

26  Defendants, including Defendant Chapman, attempted to silence his whistle-blowing by placing him

27  on administrative leave twice, making him stop working at the Juvenile Justice Center, requiring

28  him to update his charts, requiring him to take a remedial record-keeping course, constructively

1  discharging him, and placing a fraudulent document in his personnel file.  (Compl. ¶¶ 13, 15, 16, 20,

2  26, 38, 56; Auluck Decl. ¶¶  6, 7, 10, 12, 15.)  Disciplining and terminating an employee can

3  constitute threatening, intimidating, or coercive acts under the Bane Act.  <u>Gonzalez v. City of</u>

4  <u>McFarland</u>, Case No. 13-00086, 2013 U.S. Dist. LEXIS 72004, at *45 (E.D. Cal. May 21, 2013).

5  Defendant does not contend otherwise.

6        Plaintiff has also shown a probability of success on his FEHA age discrimination claim.  It is

7  undisputed that Plaintiff was over forty years old at all relevant times, and Plaintiff alleges that he

8  provided "exceptional psychiatric care" for over 20 years and was "lauded for outstanding service."

9  (Compl. ¶ 11.)  Plaintiff also alleges that he was replaced by a younger physician at the Juvenile

10 Justice Center.  (Compl. ¶¶ 22, 23,57, 58.)  Finally, Plaintiff has pled numerous "adverse

11 employment actions," including placing Plaintiff on administrative leave twice and requiring him to

12 give up his position at the Juvenile Justice Center.  <u>See</u> <u>Ray v. Henderson</u>, 217 F.3d 1234, 1241 (9th

13 Cir.  2000).

14        In sum, even assuming that Defendant Chapman's filing of the 805 report and submission of

15 an allegedly fraudulent document formed a substantial part of claims two and five, Plaintiff has

16 shown a probability of succeeding on these claims.  The Court therefore denies Defendant's motion

17 to strike.

18 **III.**    **Motion to Strike Punitive Damages**

19        Defendant Chapman also argues that the Court should strike punitive damages under  Federal

20 Rule of Civil Procedure 12(f).  To the extent that Defendant's argument is premised on the Court

21 striking the second and fifth causes of action, the argument fails for the reasons set forth above.

22 Further, as stated above, the Federal Rules provide for "notice pleading," and Federal Rule of Civil

23 Procedure 9(b) allows a plaintiff to plead malice generally.   Therefore, the Court need not decide

24 whether Plaintiff's cause of action under California Health & Safety Code § 1278.5 independently

25 allows for punitive damages.

26 **III.**    **Attorneys' Fees**

27        Defendant Chapman seeks attorneys' fees under California Code of Civil Procedure section

28 425.16(c), which provides that a prevailing defendant is entitled to fees and costs.  Because

**United States District Court**
For the Northern District of California

1   Defendant did not prevail on his anti-SLAPP motion, the Court denies his fee request.  The Court

2   may award Plaintiff attorney's fees under the anti-SLAPP statute only upon finding that Defendant's

3   motion to strike was frivolous or solely intended to cause unnecessary delay.   Cal. Code Civ. Proc.

4   § 425.16(c).  The Court does not so find and denies Plaintiff's request for fees.

5   **IV.      Leave to Amend**

6          In addition to opposing Defendant's anti-SLAPP motion, Plaintiff requests leave to file an

7   amended complaint.  Defendant asserts that amendment would be futile.  "[G]ranting a defendant's

8   anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to

9   amend would directly collide with Fed. R. Civ. P. 15(a)'a policy favoring liberal amendment."

10  Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).  In deciding

11  whether to grant leave to amend a complaint, a court considers undue delay, bad faith or dilatory

12  motive, futility of amendment, and prejudice to the opposing party.  Wininger v. SI Mgmt. L.P., 33

13  F. Supp. 2d 838, 844 (N.D. Cal. 1998).   Because there is no evidence of undue delay, bad faith,

14  dilatory motive, or prejudice to Defendants, the Court grants Plaintiff leave to file an amended

15  complaint.  The Court orders Plaintiff to meet and confer with Defendants and file an amended

16  complaint (either the proposed amended complaint attached to Plaintiff's opposition, or, if the

17  parties stipulate to it, a different one) by February 18, 2014.

18  **V.      Conclusion**

19         The Court denies Plaintiff's motion to strike and grants Plaintiff leave to file an amended

20  complaint.

21         **IT IS SO ORDERED.**

22

23

24  Dated: February 18, 2014

    _____
    ELIZABETH D. LAPORTE
    United States Magistrate Judge

25

26

27

28

13